JOHN LOGAN

*v.*

JOHN H. WILLIAMS.

1. ACKNOWLEDGMENT OF DEEDS—*taken before unauthorized officer, cured by subsequent legislation.* The acknowledgment of a deed under the act of 1819, which conformed to the requirements of that act as to the form of the officer's certificate, but which was taken by an officer not authorized by it to take acknowledgments, is cured by the amendatory statutes of 1827 and 1829, authorizing such officer to take acknowledgments, which are retrospective in their operation; and the provision in the latter acts requiring the certificate of acknowledgment to show that the grantors were personally known to the officer, will not be held to apply to acknowledgments taken before their passage, but only to subsequent acknowledgments.

2. JURISDICTION—*of the person, by publication.* Where the record of a proceeding to foreclose a mortgage, in 1822, showed that the court ordered publication of notice to the defendants, having found them to be non-residents, and the court, at the next term, in its decree, found that notice had been given, as required, to the defendants: *Held,* that, in a collateral proceeding, it would be presumed that the notice given was sufficient, in

the absence of proof to the contrary, and that the court had jurisdiction of the persons of the defendants, although all their names did not appear in the orders and decrees.

3. DECREE—*description of land by reference to bill.* Where a bill to foreclose two mortgages made the mortgages part of the bill, as exhibits, and the lands were properly described therein, a decree of foreclosure which directs the sale of the mortgaged premises described in the complainant's bill, giving the number of tracts only, and without further description, will be sufficient. In such case, a formal description of the lands is unnecessary.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Mr. L. E. EMMONS, for the appellant.

Mr. JOHN H. WILLIAMS, and Mr. H. A. TURNER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by John Logan, in the circuit court of Adams county, against John H. Williams, to recover a certain quarter section of land in Adams county.

A trial was had before the court without a jury, and the issues were found in favor of the defendant, and judgment rendered against the plaintiff for costs, who brings the record here by appeal.

The appellant, for the purpose of establishing title to the premises, read in evidence an exemplification of the patent from the United States to Samuel Andrews, dated March 24, 1818; a deed from Samuel Andrews to Wm. M. O'Hara, dated November 1st, 1819. He then offered in evidence a certified copy of a mortgage from Wm. M. O'Hara and wife to John P. Cabanne, containing the land in controversy and fifty-three other quarter sections in the Military Tract, dated —— day of September, 1820, and recorded the 21st day of February, 1821. The acknowledgment was taken before a notary public, in the city of St. Louis, and State of Missouri, October 3d, 1820.

To the introduction of this mortgage in evidence the appellee objected, on the ground, it was not acknowledged before an officer authorized by law to take the acknowledgment.

The court sustained the objection and excluded the mortgage.

The appellant then offered in evidence a certified copy of the proceedings of the circuit court of Pike county in a certain cause wherein John P. Cabanne was complainant and Susan O'Hara *et al.* were defendants, in a suit to foreclose the mortgage which had been excluded by the court. This record the court excluded.

Appellant then offered in evidence a deed, dated February 20th, 1823, from Henry Starr, who was a commissioner appointed by the court on the foreclosure of the mortgage, to sell the lands, to John P. Cabanne. This deed was also excluded by the court.

Appellant then read in evidence deeds by which he deduced title to the land by mesne conveyances from John P. Cabanne to himself.

The appellee, as is said by the record, deduced title to the land by mesne conveyances from Wm. M. O'Hara to himself.

The first question presented is, whether the mortgage from O'Hara and wife to Cabanne, which the court excluded, was competent evidence.

The act of February 19th, 1819, which was in force at the time the mortgage was acknowledged, required it to be acknowledged by the grantor, or proved by one of the subscribing witnesses, before some judge of a superior court of the State, mayor or chief magistrate of the city, or before the clerk of the county or other court of the county, where such deeds and conveyances shall be made and certified under the common public seal of such city or county.

By the terms of the act, a notary public was not empowered to take the acknowledgment, but, in 1827, the legislature passed another act concerning the conveyance of real estate, and in 1829 the act of 1827 was amended.

The first section of the act of 1829 is as follows: That all deeds and conveyances of lands lying within this State may be acknowledged or proved before either of the following named officers: Any judge or justice of the Supreme or District Court of the United States; any commissioner to take acknowledgments of deeds; any judge or justice of the Supreme, Superior or circuit court of any of the United States or territories; any clerk of a court of record, mayor of a city, or notary public; but when such proof or acknowledgment is made before a clerk, mayor or notary public, it shall be certified by such officer under his seal of office. All deeds and conveyances which have been or may be acknowledged or proved in the manner prescribed in this section, shall be deemed as good and valid in law as if the same had been acknowledged or proved in the manner prescribed in the 9th section of the act to which this is an amendment. Purple's Real Estate Statutes, 487.

The object of this statute was, to cure defective acknowledgments. It was, by its express terms, retroactive in its operation.

There had, no doubt, been a large number of conveyances made where the acknowledgments had been taken before officers not authorized by the statute to act. To remedy the evil and cure the defects, this curative statute was, no doubt, passed.

After the Revision of 1845, and in 1847, a similar curative statute was enacted. The very aim and object of these acts were to validate acknowledgments which had been taken before notaries public and other officers who were not at the time empowered by the statute to act.

These curative statutes should receive a liberal construction, such as will accomplish the object intended by their enactment by the legislative branch of the government.

When the mischief to be remedied and the manifest object of the statutes are kept in view, there can be no doubt that the acknowledgment was validated by the curative acts.

It is, however, urged that the acknowledgment is bad, for the reason the notary did not certify that the grantor was personally known to him to be the person whose name is subscribed to the mortgage, as required by the act of 1827, and in support of this position we are referred to the case of *Adams* v. *Bishop*, 19 Ill. 395, as an authority holding the acknowledgment in form must conform to the act of 1827. The obvious answer to this, however, is, that the act of 1819, in force at the time this mortgage was acknowledged, and which must control, did not require the officer to certify to the personal identity of the mortgagor.

The act of 1827 contained that requirement, and the acknowledgment passed upon in the case of *Adams* v. *Bishop*, *supra*, was made after the act of 1827 went into effect, and in that case the court very properly held the certificate of the officer must conform to the latter act.

The identical question here involved arose in the case of *Carpenter* v. *Dexter*, 8 Wallace, 513. There, a deed was acknowledged before a justice of the peace, in 1818, who was not authorized by the laws of Illinois at that time to take the acknowledgment.

The court held the curative act of 1847 validated the acknowledgment, notwithstanding the officer taking the acknowledgment failed to certify that the grantor was personally known to him, as required by the acts of 1827 and 1845. The construction placed upon the statute by the court was undoubtedly correct. From these views it follows that the mortgage was properly acknowledged, and should have been admitted in evidence.

The next question arising upon the record is, whether the record of the proceedings of the circuit court of Pike county, in the case of *John P. Cabanne* v. *Susan O'Hara et al.* was admissible in evidence.

John P. Cabanne held three promissory notes, amounting, in the aggregate, to $5462.20, against Wm. M. O'Hara. These notes were secured by two mortgages executed by

O'Hara and his wife, both of record in Pike county, one dated in September, 1820, containing fifty quarter sections of land in the military tract; the other was executed April 13, 1821, and contained sixteen quarter sections of land situated in the Military Tract.

At the time the mortgages were executed, Pike county embraced all the land lying between the Illinois and Mississippi rivers, extending to the north boundary of the State.

John P. Cabanne filed a bill, which was pending at the April term, 1822, of the circuit court of Pike county, to foreclose the two mortgages, from which it appears that William O'Hara had died; that his widow and children were non-residents. The bill was exhibited against Susan O'Hara, widow, and others, children and heirs at law of Wm. M. O'Hara, deceased.

Two objections are urged against the validity of the decree of sale rendered in the cause: First, that the court did not acquire jurisdiction of the defendants by service of summons or publication of notice, as required by law. Second, that the lands are not described in the decree.

At the April term, 1822, the record shows a certain cause pending, and an order of court, as follows:

"Daniel C. Bass, complainant, *v.* John Adams and Elizabeth, his wife, defendants. In Chancery.

"It appearing to the court that the defendants in this cause are not inhabitants of this State, and they not having answered the complainant's bill, it is ordered by the court that they file their answer to said bill with the clerk of this court on or before the first day of the next October term of said ———, or that said bill will be taken for confessed against them. And it is further ordered that a copy of this order be published three weeks, successively, in the Edwardsville Spectator."

"Robert Simpson, complainant, *v.* Susan O'Hara and others, defendants. In Chancery."

"John P. Cabanne, complainant, *v.* Same, defendants. In Chancery."

"*Ordered,* That the same notice be given in the two last cases as in the one immediately preceding."

At the October term, 1822, the record shows the following :

"This day came the complainant by his counsel, and it appearing to the court that the order made at the last term for the appearance of the defendants in this cause has been published three weeks, successively, in the Edwardsville Spectator, as required by said order, and the defendants not having entered their appearance herein or answered the bill of complaint, on motion of complainant's counsel, it is ordered by the court that said bill be and the same is hereby taken for confessed against them."

The act of 1819, providing for service upon non-residents, in force at the time these proceedings were had, declares that, if any defendant in chancery reside out of the State, or can not be found to be served with process of subpœna, or abscond to avoid being served therewith, public notice shall be given to the defendant, signed by the clerk, in any newspaper printed in this State, or in any adjoining State or territory, as the court may direct, that unless he appear and file his answer by a day given him by the court, the bill shall be taken *pro confesso.*

What the form of the notice published was, does not appear, nor is it material, as no form is prescribed. The nature of the notice seems to have been left, in a great measure, to the discretion of the court. The court, by the decree, found that notice had been given as required by the order of the court, and when the question arises collaterally, as it does here, the presumption of law is, that the notice given the defendant was sufficient.

The court that rendered the decree that notice had been given as required, was a court of general jurisdiction, and the presumption of law is, the court had jurisdiction of the

parties, and the decree valid, until the contrary is made to appear.

It is said the children and heirs at law of Wm. M. O'Hara were not notified or brought into court by their proper names; that fact, however, does not appear from the record. The defendants to the bill were Susan O'Hara and others, the widow and heirs at law of Wm. O'Hara, deceased.

At the first term of court at which the bill was pending, the court found the fact, as shown by the decree, that the defendants were not inhabitants of the State. An order based upon this finding was entered requiring the defendants to be notified by publication in a certain paper. At the next term of the court it was a question for the court to determine whether notice had been given the defendants, from the proof then produced.

The court heard the proof, and found and adjudged that the required notice had been given. What the notice contained the record does not disclose, but when the question arises collaterally, the legal presumption is, that the notice which the court passed upon contained every fact necessary to give the court jurisdiction of the persons of the defendants. As was said in *Reddick et al.* v. *The State Bank*, 27 Ill. 145, "It is to be presumed that no court will state of record the existence of facts which had no existence, or pass a decree, or render a judgment, unless proof of service or notice were actually produced. The record, therefore, stating such facts, and nothing to the contrary appearing, it should be received as evidence of their existence." See, also, *Galena and Chicago Union Railroad Co.* v. *Pound*, 22 Ill. 399; *Rivard* v. *Gardner*, 39 Ill. 129; *Moore* v. *Neil*, 39 Ill. 256.

The decree of foreclosure sought to be impeached was entered October 7th, 1822, by the terms of which the minor defendants had the right, at any time within one year after they became of age, to appear and contest the decree.

Under this decree the mortgaged lands have been sold and passed into the hands of actual settlers, on the faith of the

solemn adjudication of a court of general jurisdiction.  Purchasers have improved and rendered the lands valuable, and for more than half a century no effort has been made by the heirs of the mortgagor, or those claiming under them, to impeach the validity of the decree of sale.  Under such circumstances, to permit the effect of a judicial record to be overturned without the most cogent reasons, would, in effect, open a wide door to fraud and speculation, destroy all confidence in judicial sales, and remove that protection from innocent purchasers which it has been the doctrine of all courts to uphold and sustain.

In *Voorhees* v. *The Bank of the United States*, 10 Peters, 449, the court, in discussing a question of this character, said, "that some sanction should be given to judicial proceedings, some time limited beyond which they should not be questioned, some protection afforded to those who purchase at sales by judicial process, and some definite rules established by which property thus acquired may become transmissible with security to the possessors, can not be denied."

The objection that the decree does not describe the lands is not well taken.  The decree directs the sale of the mortgaged premises mentioned and described in the complainant's bill of complaint, being sixty-six quarter sections of land.

By referring to the mortgages, which were made a part of the bill, an accurate description of the lands is found.

It was not at all necessary that a formal description of the lands should be inserted in the decree.

There is no uncertainty as to the lands decreed to be sold or that were actually sold.

The land in controversy is embraced in one of the mortgages described in the bill.  It is contained, also, in the commissioner's report of sale and deed.

The mortgages, and proceedings in the foreclosure of the same in the circuit court of Pike county, and commissioner's deed, which the court excluded, should have been admitted

in evidence, and upon the evidence introduced and offered, the judgment should have been entered in favor of appellant.

The judgment will be reversed, and the cause remanded for another trial consistent with this opinion.

*Judgment reversed.*